1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NANCY JUNE NOVAK,** | **CASE NO. 1:13-CV-1402 AWI BAM** |
| **Plaintiff** | |
| **v.** | **ORDER ON DEFENDANTS' MOTION TO DISMISS** |
| **MERCED POLICE DEPARTMENT, et al.,** | |
| **Defendants** | (Doc. No. 10) |

This case arises out of a confrontation between Plaintiff Nancy Novak ("Novak"), who is a psychiatric nurse at a Merced County mental health unit, and members of the Merced Police Department and two employees of a private care company during an attempted Welfare and Institutions Code § 5150 (hereinafter "§ 5150") admission of a mentally retarded individual. Defendants Joella Brewer ("Brewer"), Christina Trigg ("Trigg"), The Mentor Network ("Mentor"), Loyd's Liberty Homes, Inc. ("Loyd"), and Care Meridian, LLC ("Meridian") (collectively the "Home Defendants") have filed a Rule 12(b)(6) motion to dismiss all of the claims alleged against them.  For the reasons that follow, the motion to dismiss will be granted.

## <u>FACTUAL BACKGROUND</u>

Novak was a Psychiatric Staff Nurse II at the Marie Green Psychiatric Center Inpatient Unit ("MGPC"), which is part of the County of Merced's Department of Mental Health Crisis

1   Stabilization Unit.  MGPC provides outpatient assessment treatment services for individuals who

2   require urgent mental health services or for individuals with acute mental illness.  MGPC admits

3   persons who are unable to care for themselves because of a mental problem or for reasons under

4   Welfare & Institutions Code § 5150.  However, individuals who have an overriding medical

5   problem or concern will be medically cleared first at Mercy Merced Community Hospital before

6   admission to MGPC.

7        Mentor provides medical services, including in-home care for patients that need such

8   services.  Loyd provides residential care for physically disabled or injured individuals.  Trigg and

9   Brewer are employed by either or both Mentor and Loyd.

10        On September 1, 2012, it appears that Defendant Officer Rasmussen ("Rasmussen")

11   responded to a call for assistance at Mentor and/or Loyd.  Rasmussen assisted with T.E., a

12   medically problematic patient at Mentor/Loyd.  T.E. was physically restrained because of his

13   retardation, aggressive actions towards other patients and staff at Mentor/Loyd, epileptic seizures,

14   and other physical problems.  T.E. was physically violent.  Trigg and Brewer were told by a nurse

15   from Mentor and/or Loyd to take T.E. to be admitted to MGPC pursuant to § 5150.  Accordingly,

16   Trigg and Brewer took T.E. to MGPC strapped inside a van, and Rasmussen followed in his police

17   patrol vehicle.

18        Upon arrival at MGPC, Novak determined that T.E. was not being admitted because of

19   mental health problems, but because of physical violence and physical problems, including

20   seizures and other intracranial pressure problems.  It appears that because of this determination,

21   Novak told Rasmussen that she would not be admitting T.E.  Rasmussen became very belligerent

22   and confrontational with Novak, and then called Defendant Sgt. Struble ("Struble").  Struble

23   demanded that Novak, as the admitting nurse of MGPC, admit T.E.  Novak continued to explain

24   that because of T.E.'s physical injuries and problems, he should be taken to the hospital because

25   MGPC is unable to manage someone who is having physical problems (as opposed to someone

26   who is having mental problems).  Trigg and Brewer wanted to have T.E. admitted to MGPC and

27   wanted T.E. to have a complete medical examination and workup.  Trigg and Brewer

28   misrepresented the physical conditions and disabilities that afflicted T.E.

1    Novak explained that MGPC did not have the ability or capability to do a physical exam or

2    admit patients with physical problems, and that T.E. could not be admitted.  After Rasmussen,

3    Trigg, and Brewer continued to verbally and physically harass Novak and demand that T.E. be

4    admitted to MGPC, Novak said that she would call the medical director, Dr. Manuel.  Dr. Manuel

5    told Novak that MGPC could not admit or handle T.E.  Novak advised Rasmussen, who had been

6    acting verbally and physically hostile towards Novak, that Dr. Manuel would not allow the

7    admission of T.E.  Rasmussen responded that Struble had said that MGPC was required to admit

8    T.E. based on Struble's determination of T.E.'s medical problems.  Struble, Rasmussen, Trigg,

9    and Brewer continued to unlawfully demand that Novak admit T.E.

10    Novak offered to let Dr. Manuel speak with Struble and Rasmussen, and informed

11    Rasmussen that it would be illegal to admit T.E., that Dr. Manuel was prohibiting the admission,

12    and that it would be illegal to accept T.E. if he had physical problems that were not due to a

13    mental health issue.  Rasmussen informed Novak that Struble would speak to Dr. Manuel, and

14    referred to Dr. Manuel as a man.  Novak informed Rasmussen that Dr. Manuel was a woman and

15    then remarked that it seemed Rasmussen was making sexist remarks about Dr. Manuel.

16    Rasmussen then yelled at Novak to "back up."  The hostility and physical threat of

17    violence by Rasmussen caused Novak to freeze.  Rasmussen then grabbed Novak and threw her

18    face down on the trunk of his patrol car.  Novak objected to this excessive force and attempted to

19    turn around to talk to Rasmussen.  Novak asked numerous times whether she was under arrest, but

20    instead of verbally responding, Rasmussen increased the physical force of holding Novak down on

21    the trunk.  Novak experienced difficulty breathing.  Novak yelled for help to a co-worker.

22    Rasmussen then ordered Novak to get on the ground and refused to answer whether she was under

23    arrest.  Rasmussen then slammed Novak to the ground on her knees, and then forced her head onto

24    the asphalt.  Rasmussen's actions caused Novak to temporarily lose consciousness.  At no point

25    did Novak resist Rasmussen.  Nevertheless, Rasmussen then punched Novak in her stomach.

26    During this episode, Novak urinated on herself.  Rasmussen appears to have then placed Novak in

27    his patrol vehicle.

28    Struble and Defendant Officer Chavez then arrived.  Novak tried to inform the officers that

3

1    she was bleeding and had other wounds inflicted by Rasmussen.  Chavez came to Novak,

2    informed Novak that she was to sign a citation and that she was being arrested for resisting an

3    officer.  Chavez said that if Novak would not sign the citation, she would be taken and booked

4    into the Merced County Jail.

5         Chavez ordered Novak out of the patrol car.  Novak was unable to stand up and told

6    Chavez that her back was killing her.  Struble later came over and informed Novak that he wanted

7    to take photos of her injuries.  Various photos were taken of Novak, including Novak handcuffed,

8    in the patrol vehicle, and outside the patrol vehicle.  While Struble was taking photos, Novak

9    asked if a coworker could also take photos.  Struble said no.  Novak then asked for copies of the

10   photos, to which Struble said that Novak would have to get an attorney if she wanted copies.

11        After speaking with Struble, Novak walked back into MGPC bent-over, and it was about

12   30 minutes until she could straighten her back and sit in a chair.  Despite the requirements of

13   § 5150, at no time did Rasmussen, Struble, Chavez, Trigg, or Brewer provide any written

14   documentation detailing the factual circumstances and observations that constituted probable

15   cause for these Defendants to believe that T.E. required psychiatric evaluation pursuant to § 5150.

16

17   **RULE 12(b)(6) FRAMEWORK**

18        Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

19   plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). A

20   dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

21   absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar,

22   646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121

23   (9th Cir. 2008).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

24   taken as true and construed in the light most favorable to the non-moving party.  Faulkner v. ADT

25   Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121.  However,

26   complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the

27   elements of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Dichter-Mad Family

28   Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013). The Court is not required "to

accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761. "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). The Ninth Circuit has distilled the following principles from Iqbal and Twombly: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. Dichter-Mad, 709 F.3d at 761. Facts raised for the first time in opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice. Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities. See Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir. 2012); Telesaurus VPC. LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

**DEFENDANTS' MOTION**

**1.**    **Conspiracy Allegation**

*Defendants' Argument*

The Complaint alleges that a conspiracy existed among the Defendants to cause harm and injury to Novak.  Conspiracy rests on the commission of a tort and actual knowledge that the tort will occur with the intent that the tort does occur.  Here, the only actual allegations of wrongdoing by Trigg and Brewer are that they did not have probable cause paperwork under § 5150, they made misrepresentations to Novak about T.E.'s physical condition and disabilities, and that they harassed Novak and demanded that T.E. be admitted.  However, none of these allegations reflect tortious behavior.  First, not having paperwork filled out prior to arrival is not unlawful, as § 5150.2 contemplates that the officer after admission of a subject may detain that subject long enough to fill out the required paperwork.  Second, other medical opinions are sought regularly, and a mere disagreement about a diagnosis does not mean that Trigg and Brewer were making fraudulent misrepresentations.  Novak had no previous interaction with Trigg or Brewer and knew nothing of their training or experience.  Moreover, no specific misrepresentations are actually identified.  The allegations do not create a plausible claim of misrepresentation.  Third, use of the word "harass" is a mere legal conclusion.  The only facts alleged show an oral disagreement between Novak and Trigg and Brewer, not tortious conduct.  In terms of tortious acts by another, there are no allegations that show that Trigg or Brewer had actual knowledge of a planned tort or that they concurred in a tortious scheme with knowledge of an unlawful purpose.  No allegations indicate that either Trigg or Brewer intended to aid in the commission of an unlawful act, or that Trigg or Brewer shared a common plan with Rasmussen. All that can be fairly said is that Trigg and Brewer were present when Rasmussen allegedly used excessive force.  Thus, the allegations of conspiracy are implausible and should be dismissed.

In reply, the Home Defendants argue that the declaration of Novak's counsel does not support a conclusion that a conspiracy was ever formed.  Although there is an indication that Rasmussen suggested that Trigg and Brewer lie, there is nothing to indicate that Trigg and Brewer agreed.  The only agreement that is indicated is an agreement between Trigg, Brewer, and

1   Rasmussen to transport T.E. to MGCP.  However, no illegality under § 5150 is apparent.  The

2   complaint alleges that T.E. was mentally retarded and physically violent, and § 5150 allows for

3   the detention of individuals who "as a result of mental disorder" is "a danger to others."  However,

4   even accepting that T.E. did not qualify under § 5150, there is nothing to indicate that Trigg and

5   Brewer knew that T.E. could not be admitted or that they agreed to commit any unlawful acts.

6   *Plaintiff's Opposition*

7   Novak argues that the declaration of her attorney shows that she can amend her complaint

8   to allege a conspiracy.  Novak argues that she can allege a conspiracy between Rasmussen, other

9   police officers, Trigg, Brewer, and other staff members of Mentor, Meridian, and Loyd to do

10  whatever was necessary, either legal or illegal, to have T.E. admitted to MGCP through § 5150

11  without actually complying with the law.  The Defendants knew that they could not admit

12  someone who was not mentally disabled or suffering from a mental disorder to MGPC, that they

13  could not admit a non-ambulatory patient to MGPC, and that they were trying to admit T.E. to

14  MCPC because of understaffing at Mentor, Meridian, and/or Lloyd's.  Trigg and Brewer gave

15  misstatements to Novak in an effort to get around the requirements of § 5150 and they encouraged

16  and assisted Rasmussen in his tortious conduct towards Novak.

17  *Legal Standard*

18  The elements of a civil conspiracy under California law are:  "(1) formation and operation

19  of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance

20  of the common design."  Rusheen v. Cohen, 37 Cal.4th 1048, 1062 (2006).  The conspiracy

21  formed must be one to commit a "civil wrong."  Youst v. Longo, 43 Cal.3d 64, 79 (1987); City of

22  Industry v. City of Fillmore, 198 Cal. App. 4th 191, 212 (2011).  Further, the conspiring

23  defendants must have actual knowledge that a tort is planned and concur in the tortious scheme

24  with knowledge of its unlawful purpose.  See Wyatt v. Union Mortgage Co., 24 Cal.3d 773, 785

25  (1979); Kidron v. Movie Acquisition Corp., 40 Cal.App.4th 1571, 1582 (1995).  A conspiracy

26  may sometimes be inferred from "the nature of the acts done, the relation to the parties, the

27  interests of the alleged conspirators, and other circumstances."  In re Sunset Bay Assoc., 944 F.2d

28  1503, 1517 (9th Cir. 1991); Wyatt, 24 Cal.3d at 785.  However, it is misleading to label a claim as

one for "conspiracy," because "conspiracy" is not a cause of action.  See Applied Equipment

Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 510 (1994); Unruh v. Truck Ins. Exch., 7 Cal.3d

616, 631 (1972).  Instead, conspiracy is a "legal doctrine that imposes liability on persons who,

although not actually committing a tort themselves, share with the immediate tortfeasors a

common plan or design in its perpetration."  Applied Equipment, 7 Cal.4th at 510; Industry, 198

Cal.App.4t h at 211-12.  For a conspiracy to engender liability, an actual tort must be committed

because a civil conspiracy "does not per se give rise to a cause of action unless a civil wrong has

been committed resulting in damage."  Applied Equipment, 7 Cal.4th at 510.  "By participation in

a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other

coconspirators within the ambit of the conspiracy," and "[i]n this way, a coconspirator incurs tort

liability co-equal with the immediate tortfeasors."  Id. at 511; Industry, 198 Cal.App.4th at 212.

Thus, everyone who enters into a civil conspiracy, even if they did not join at the conspiracy's

inception, "is in law a party to every act previously or subsequently done by any of the others in

pursuance of it."  De Vries v. Brumback, 53 Cal.2d 643, 648 (1960); Favila v. Katten Muchin

Rosenman LLP, 188 Cal.App.4th 189, 206 (2010).  The pleading standards established by Iqbal

and Twombly apply to claims of civil conspiracy, and mere conclusory allegations that a

conspiracy existed are insufficient.  See Twombly, 550 U.S. at 556-57, 564; Wisdom v. Katz,

2013 U.S. App. LEXIS 10339, *3-*4 (9th Cir. May 22, 2013).

### Discussion

Novak's opposition is essentially a concession that the Complaint does not adequately

allege a conspiracy.  As such the Court will dismiss the conspiracy allegation, which is ¶ 34 in the

Complaint.  In terms of leave to amend, the Court has reviewed and considered the declaration of

Novak's counsel.  The declaration is not entirely clear on certain points, and it does not address all

of the elements of a conspiracy.  Despite these shortcomings, and based on the arguments made in

this motion, it is not clear that amendment would be futile.

The declaration indicates that at a minimum Trigg, Brewer, and Rasmussen agreed to

attempt to commit T.E. for reasons that do not fit within § 5150.  The version of § 5150 in effect

in September 2012 provided in part for the 72 hour involuntary admission of an individual who,

1   "as a result of a mental disorder, is a danger to others . . . ."  Cal. Wel. & Inst. § 5150 (effective

2   June 27, 2012 to June 26, 2013).  Although the declaration indicates that T.E. was a danger to

3   others and the Complaint alleges that T.E. was physically violent, there are no allegations that

4   show T.E. was a danger to others as a result of a mental illness.  The closest allegation is that T.E.

5   is mentally retarded.  However, "mental retardation" is different from "mental illness."  Cramer v.

6   Gillermina R., 125 Cal.App.3d 380, 387-88 (1981).  Commitments due to "mental retardation" are

7   not within the purview of § 5150.  See Cal. Wel. & Inst. Code §§ 5002, 5008(h)(3); People v.

8   Barrett, 54 Cal.4th 1081, 1108 (2012); People v. Bailie, 144 Cal.App.4th 841, 844-45 (2006);[1]

9   Cramer, 125 Cal.App.3d at 387-88.  The Court cannot agree with Defendants that the allegations

10  and/or representations show that T.E. suffered from a "mental illness."  Further, the declaration

11  indicates that Trigg, Brewer, and Rasmussen wanted to commit T.E. to MGPC because T.E. was a

12  danger to the small number of staff who were present.  The implication is that if more or different

13  staff had been present, the danger posed by T.E. would have been manageable.  As such, there is a

14  suggestion that the attempt to commit T.E. was based in part on mere staffing problems.  Thus, the

15  declaration and the Complaint indicate an agreement to improperly commit T.E. under § 5150.

16      What the declaration does not necessarily allege, however, is that the defendant

17  conspirators knew that it was unlawful to commit T.E. under § 5150, and that the conspirators

18  intended for T.E. to be committed under § 5150 anyway.  If the members of the conspiracy do not

19  know that the object of the conspiracy constitutes a civil wrong and intend for the civil wrong to

20  occur, then there is no actionable conspiracy.  See Wyatt, 24 Cal.3d at 785; Kidron, 40

21  Cal.App.4th at 1582.  If Novak files an amended complaint, she must make allegations consistent

22  with Wyatt and Kidron that demonstrate the required "mens rea" for the conspirators.[2]

23      For the above reasons, Novak's conspiracy claim will be dismissed with leave to amend.[3]

---

[1] Disapproved on other grounds by People v. Barrett, 54 Cal.4th 1081, 1109 (2012).

[2] Mental states may be alleged generally.  See Fed. R. Civ. Pro. 9(b); Reinhardt v. Gemini Motor Transp., 879 F.Supp.2d 1138, 1142 (E.D. Cal. 2012).

[3] The Court's purpose was to determine whether amendment would be futile.  The Court did not address every allegation or contention in the declaration of Novak's counsel.  By not addressing a particular contention, the Court is not holding that Novak cannot include such a contention in an amended complaint.  Novak may include all facts that she believes is necessary to properly allege the conspiracy that existed in this case.

1    **2.      Third & Fifth Causes of Action – Negligence & Negligence Per Se**

2          *Defendants' Argument*

3          With respect to the third cause of action, the Home Defendants argue that the Complaint

4    alleges that Novak was harmed by contact to her body and by the failure to follow § 5150.  As to

5    the first theory, the Complaint does not allege that the Home Defendants ever touched Novak, so

6    there is no liability for the harm caused by physical contact.  As to the second theory, no authority

7    is identified that makes a failure to follow § 5150 actionable.  Further, the complaint fails to allege

8    how the Home Defendants actually violated § 5150.  At most, the Complaint suggests that the

9    Home Defendants did not fill out paperwork.  However, such an allegation is conclusory and it

10   cannot be said that incomplete paperwork caused any damage to Novak.

11         With respect to the fifth cause of action, the Home Defendants argue that the Complaint

12   relies on Penal Code § 148, which prohibits obstructing, resisting, or delaying a public officer or

13   emergency medical technician ("EMT") in the discharge of her duties.  However, Novak is not an

14   officer or an EMT, and thus is not covered by § 148.  Also, even if § 148 did apply, Trigg and

15   Brewer were not willfully obstructing, resisting, or delaying, rather, they at worst were asserting

16   their First Amendment right to disagree with Novak's diagnosis and assessment of T.E.  Although

17   officers and EMT's may dislike being the object of abusive language, such speech is protected by

18   the First Amendment.  There are no allegations that Trigg and Brewer's disagreement with Novak

19   ever went beyond the proper exercise of their First Amendment rights.

20         *Plaintiff's Opposition*

21         With respect to the third cause of action, Novak argues that there was negligence by Trigg

22   and Brewer in their conspiracy to assist, aid, and abet Rasmussen in his conduct of attacking,

23   harming, and injuring Novak.  As for § 5150, a presumption of negligence arises if a defendant

24   violates a statute.  Trigg and Brewer violated § 5150 and intentionally provided a statement that

25   was known to be false.  Trigg and Brewer's violation of § 5150 caused injury through assistance,

26   encouragement, and abetting Rasmussen, which caused Novak's physical injuries.  The injury was

27   one that was designed by § 5150 to avoid.  Novak, as an admitting psychiatric nurse, is one of the

28   class of persons that § 5150 was designed to protect.  Mentor, Meridian, and Loyd are vicariously

1    liable for Trigg and Brewer's conduct and violation of § 5150.

2          With respect to the fifth cause of action, Novak argues that she enjoys the same protection

3    as an EMT because she was working in an emergency situation at MGPC.  With such coverage,

4    and considering the conspiracy involved, a plausible claim under § 148 is stated.

5          *Legal Standards*

6          "Negligence is the failure to use reasonable care to prevent harm to oneself or to others. . . .

7    A person is negligent if he or she does something that a reasonably careful person would not do in

8    the same situation or fails to do something that a reasonably careful person would do in the same

9    situation." Raven H. v. Gamette, 157 Cal.App.4th 1017, 1025 (2007).  Thus, the elements of

10   actionable negligence are: (1) a legal duty to use due care; (2) a breach of that duty; (3) causation;

11   and (4) damages.  See Ladd v. County of San Mateo, 12 Cal.4th 913, 917 (1996); Brown v.

12   Ransweiler, 171 Cal.App.4th 516, 534 (2009).

13         The doctrine of negligence per se is not a separate cause of action, but instead creates an

14   evidentiary presumption.  Johnson v. Honeywell Intl., Inc., 179 Cal.App.4th 549, 555 (2009).  As

15   codified in California Evidence Code § 669, negligence per se "allows proof of a statutory

16   violation to create a presumption of negligence in specified circumstances." Elsner v. Uveges, 34

17   Cal.4th 915, 927 (2004).  Evidence Code § 669(a) provides that the "failure of a person to exercise

18   due care is presumed if: (1) he violated a statute, ordinance, or regulation of a public entity; (2) the

19   violation proximately caused death or injury to person or property; (3) the death or injury resulted

20   from an occurrence of the nature which the statute, ordinance, or regulation was designed to

21   prevent; and (4) the person suffering the death or the injury to his person or property was one of

22   the class of persons for whose protection the statute, ordinance, or regulation was adopted."  Cal.

23   Evid. Code § 669(a); Ramirez v. Nelson, 44 Cal.4th 908, 917-18 (2008); Spriesterbach v. Holland,

24   215 Cal.App.4th 255, 263-64 (2013).  Thus, "the plaintiff 'borrows' statutes to prove duty of care

25   and standard of care," but "still has the burden of proving causation." Johnson, 179 Cal.App.4th

26   555-56.  The first two elements of negligence per se are normally considered questions for the trier

27   of fact, while the last two elements are determined by the court as a matter of law.  See Ramirez,

28   44 Cal.4th at 918; Spriesterbach, 215 Cal.App.4th at 264.  If the plaintiff establishes the elements

11

1   of negligence per se, a presumption of negligence is created and the burden then shifts to the

2   defendant to rebut the presumption.  See Spriesterbach, 215 Cal.App.4th at 264; Sagadin v.

3   Ripper, 175 Cal.App.3d 1141, 1164-65 (1985).  Under California Evidence Code § 669(b), the

4   negligence per se presumption may be rebutted by a showing that the defendant "did what might

5   reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who

6   desired to comply with the law."  Cal. Evid. Code § 669(b)(1); Spriesterbach, 215 Cal.App.4th at

7   264; Sagadin, 175 Cal.App.3d at 1164.

8        *Discussion*

9        With respect to the negligence claim, Novak argues that Trigg and Brewer were negligent

10   in their conspiracy to harm her.  Novak's position is far from clear.  As the Court reads Novak's

11   opposition, Novak is equating the conspiracy with negligence.  That is, Novak is saying that Trigg

12   and Brewer breached a duty of care by entering into a conspiracy.  However, there is no liability

13   for simply joining a conspiracy, there must be resulting damage from the commission of a tort.

14   See Applied Equipment, 7 Cal.4th at 510.  Novak's theory would eviscerate this rule.  Every time

15   a person enters into a civil conspiracy, they would also instantaneously be negligent.  That is not

16   the law.  See id.  Given the state of the opposition, dismissal of the third cause of action is

17   appropriate.  See id.

18        With respect to the negligence per se theories, two statutes are identified in the Complaint

19   and the opposition: § 5150 and California Penal Code § 148 (hereinafter "§ 148").

20        Section 148 creates a misdemeanor for those who willfully resist, delay, or obstruct a

21   public officer, a peace officer, or an emergency medical technician ("EMT") in the discharge or

22   attempted discharge of a duty of his or her office or employment.  See Cal. Pen. Code § 148(a).

23   As indicated above, one element of negligence per se is that the plaintiff must belong to the class

24   of persons for whose protection the statute was adopted.  See Ramirez, 44 Cal.4th at 917-18.

25   Novak argues that it can be inferred from the Complaint that she should enjoy the protections of

26   EMT.  While EMT's are an expressly identified class of persons who are protected by § 148, the

27   Court disagrees that it can be inferred that Novak should be considered an EMT or receive the

28   protections of an EMT.  Section 148(a) refers to § 1790 of the Health and Safety Code as

providing the definition of an EMT.  Health & Safety Code §§ 1797.80, 1797.82, and 1797.84 are the specific sections that appear to provide the definitions of an EMT.  There are no allegations in the Complaint that indicate Novak fits into the definitions of any of these three sections.  See Cal. Health & Safety Code §§ 1797.80, 1797.82, 1797.84.  Further, Novak cites no cases that have extended the classification of EMT's to individuals in Novak's position.  Without more from Novak, it is not reasonable to extend Novak's classification to that essentially of an EMT.  If Novak is not within the protected class, then she cannot utilize § 148 for negligence per se.  See Ramirez, 44 Cal.4th at 917-18.

Additionally, assuming that Novak fits within § 148, the Home Defendants are correct that the allegations do not show that Trigg and Brewer violated the statute.  At most, what is identified in the Complaint is some sort of verbal confrontation or objections directed at Novak by Trigg and Brewer.  The First Amendment protects the right of individuals to use abusive language and to verbally criticize, object or challenge officers, irrespective of § 148.  See Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1174 (9th Cir. 2013); In re Muhammed C., 95 Cal.App.4th 1325, 1330-31 (2002); People v. Quiroga, 16 Cal.App.4th 961, 966 (1993); see also Duran v. City of Douglas, 904 F.2d 1372, 1378 (9th Cir. 1990).  If Novak means to allege that Trigg and Brewer's individual acts violated § 148, then more allegations are necessary to show that the First Amendment does not protect Trigg and Brewer's speech.

As for § 5150, as stated above, that statute in part permits the involuntary admission of an individual for 72 hours if the individual is a danger to himself or to others as a result of a mental disorder.  See Cal. Wel. & Inst. Code § 5150.[4]  A § 5150 negligence per se claim has not been

---

[4] The version of §5150 in effect in September 2012 reads in in its entirety:

When any person, as a result of mental disorder, is a danger to others or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by § 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Social Services as a facility for 72-hour treatment and evaluation.

The facility shall require an application in writing stating the circumstances under which the person's condition was called to the attention of the officer, member of the attending staff, or professional person, and stating that the officer, member of the attending staff, or professional person has probable cause to believe that the person is, as a result of a mental disorder, a danger to others, or to himself, or gravely disabled.  If the probable cause is based on the statement of a person other than the officer, member of the attending staff, or professional person, the personal shall be liable in a civil action for intentionally giving a statement which he or she knows to be false.

1   properly pled.  First, the Court agrees with the Home Defendants that Novak has not alleged how

2   Trigg and Brewer actually violated § 5150.[5]   Although the Complaint and opposition mention

3   misrepresentations, Novak has not explained what the misrepresentations were or how they

4   violated § 5150.  Second, the Court has found limited authority that has permitted negligence per

5   se claims to be based on § 5150.  See Bock v. County of Sutter, 2012 U.S. Dist. LEXIS 124699,

6   *44-*46 (E.D. Cal. Aug. 30, 2012).  However, in Bock, a decedent's estate alleged a negligence

7   per se claim based on a violation of § 5150 because the decedent had been placed in an

8   unapproved facility.  See id.  Similarly, California courts have recognized that the Lanterman-

9   Petris-Short Act, of which § 5150 is a part, "must be construed to promote the intent of the

10  Legislature, among other things, to end the inappropriate, indefinite and involuntary commitment

11  of mentally disordered persons, to provide prompt evaluation and treatment, and to protect

12  mentally disordered persons."  Jacobs v. Grossmont Hosp., 108 Cal.App.4th 69, 75 (2002);

13  Michael E.L. v. County of San Diego, 183 Cal.App.3d 515, 525 (1983); see Cal. Wel. & Inst.

14  Code § 5001.  Case law and the language of the statute indicate that the procedures and protections

15  created by § 5150 are designed to protect those who are to be admitted to an institution, not those

16  who actually admit/commit another to an institution.  Here, T.E. appears to be the actor in this

17  case who fits within the class intended to be protected by § 5150, not Novak.  The Court has

18  significant doubts that Novak is within the class of persons that § 5150 was designed to protect.

19  Without more from Novak, she does not meet the fourth element of negligence per se.[6]

20          Because Novak has not shown she fits within a protected class, and it appears at this point

21  that the First Amendment protects Trigg and Brewer, no § 148 negligence per se theory is properly

22  alleged.  Further, Novak has not demonstrated how Trigg and Brewer violated § 5150, nor has she

23  demonstrated that she fits within the class of persons whom § 5150 was designed to protect.

24  Accordingly, dismissal of the third and fifth causes of action is appropriate.

25  _____

26  [5] Novak does not confirm that she is relying on a failure to fill out required paperwork, nor does she address the
    legitimate argument that the failure to fill out paperwork would not seem to be the proximate cause of her injuries.

27  [6] The Court notes that Novak's opposition indicates she meets the second negligence per se element in that Trigg and
    Brewer's encouragement of Officer caused her injury.  However, it is the violation of the statute that must cause the

28  injury.  Ramirez, 44 Cal.4th at 917-18.  Encouragement of the officer is not the same as the violation of the statute.  If
    the violation of the statute did not proximately cause Novak's injury, then negligence per se is not applicable.  See id.

14

**3.**      **Fourth Cause of Action – Negligent Hiring, Supervision, Retention**

*Defendants' Argument*

The Home Defendants argue that only an employer may be held liable for negligent hiring, training, supervision, and/or retention. This cause of action is one for direct liability. Trigg and Brewer are not employers, and thus cannot be liable. As for Mentor, Meridian, and Loyd, the Complaint fails to allege a single act that constitutes a failure to train, supervise, hire, or retain. Thus, the claim is not plausible and should be dismissed.

*Plaintiff's Opposition*

Novak argues that Trigg and Brewer were unfit or incompetent and admitted that they were at a facility that could not maintain or care for T.E. Trigg and Brewer were not licensed or trained to handle or care for a patient like T.E. or to properly assess a patient like T.E. Trigg and Brewer (and possibly an unknown supervisor) conspired to commit T.E. and to harm Novak. The negligence of Mentor, Meridian, and/or Loyd was a substantial factor in harming Novak. Such allegations meet the elements of negligent hiring, training, and supervision.

*Legal Standard*

"California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." Doe v. Capital Cities, 50 Cal.App.4th 1038, 1054 (1996); see also Phillips v. TLC Plumbing, Inc., 172 Cal.App.4th 1133, 1139 (2009). "Liability for negligent hiring will be imposed on an employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." Delfino v. Agilent Techs., Inc., 145 Cal.App.4th 790, 815 (2006); Doe, 50 Cal.App.4th at 1054. "Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability." Phillips, 172 Cal.App.4th at 1139; Delfino, 145 Cal.App.4th at 815.

*Discussion*

As an initial matter, Novak does not defend this cause of action as to Trigg and Brewer, and the Complaint expressly alleges that Trigg and Brewer are employees of Mentor and/or Loyd. See Complaint ¶¶ 12, 13. The tort of negligent hiring, supervision, and/or retention is a direct

1  action against an employer.  See Phillips, 172 Cal.App.4th at 1139; Delfino, 145 Cal.App.4th at

2  815.  Because Trigg and Brewer are alleged to be employees, they are not employers and cannot

3  be liable under this cause of action.  The fourth cause of action will be dismissed with prejudice as

4  to Trigg and Brewer.  See id.

5  As for Mentor, Meridian, and Loyd, the Complaint alleges negligent supervision and

6  training regarding the procedures and requirements of § 5150, including dealing with nurses at

7  hospitals.  The Complaint also alleges a failure investigate the background of Trigg and Brewer.

8  The Court finds the Complaint's allegations inadequate.  First, there are no allegations that

9  indicate how Trigg and Brewer were negligently supervised or trained.  That is, it is unknown

10 what about their training and supervision was negligent.  Second, there are no allegations that

11 indicate why Mentor, Meridian, or Loyd were negligent in their hiring of Trigg and Brewer.

12 Third, liability for this tort arises when an employer knew or should have known of a particular

13 risk and that risk later materializes.  See Delfino, 145 Cal.App.4th at 815.  Here, the obvious risk

14 of inadequate training regarding § 5150 would be the improper commitment of a person like T.E.

15 The harm suffered by Novak at the hands of Officer Rasmussen does not appear to be the kind of

16 harm or risk that would be associated with improper training as to § 5150.

17 Dismissal of this cause of action is appropriate.

18

19 **5.**      **Sixth & Seventh Causes of Action – Assault and Battery**

20 *Defendants' Argument*

21 A careful reading of the Complaint shows that each of the allegations that are relevant to

22 either the assault or battery claims all relate to the police defendants.  There are no allegations that

23 relate to or support a claim for either assault or battery against the Home Defendants.

24 *Plaintiff's Opposition*

25 Being a co-conspirator or aiding and abetting in the commission of a tort makes one liable

26 for the tort committed.  The Home Defendants knew that an assault and/or battery was going to be

27 committed by Rasmussen.  Trigg and Brewer gave substantial assistance, abetted, or encouraged

28 Rasmussen.  Through the conspiracy, the Home Defendants are liable for Rasmussen's conduct.

16

1      *Legal Standard*

2         A civil battery is "an offensive and intentional touching without the victim's consent."

3 Kaplan v. Mamelak, 162 Cal.App.4th 637, 645 (2008).  The elements of a civil battery under

4 California law are: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the

5 intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was

6 harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position

7 would have been offended by the touching.  So v. Shin, 212 Cal.App.4th 652, 669 (2013); see also

8 Fluharty v. Fluharty, 59 Cal.App.4th 484, 497 (2004).

9         A civil assault is a "demonstration of an unlawful intent by one person to inflict immediate

10 injury on the person of another then present."  Steel v. City of San Diego, 726 F.Supp.2d 1172,

11 1189 (S.D. Cal. 2010); see Lowry v. Standard Oil Co., 63 Cal.App.2d 1, 6-7 (1944).  Civil assault

12 "recognizes the right of the individual to peace of mind, to live without fear of personal harm."

13 Thing v. La Chusa, 48 Cal.3d 644, 649 (1989). The elements of a civil assault under California

14 law are:  (1) defendant acted with intent to cause harmful or offensive contact, or threatened to

15 touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to

16 be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant

17 was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff

18 was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm.  So,

19 212 Cal.App.4th at 669.

20      *Discussion*

21         There are no allegations that either Trigg or Brewer touched Novak or caused Novak to be

22 in fear of an imminent touch.  Thus, there is nothing to support "direct liability" against Trigg and

23 Brewer for these claims.  Instead, Novak is relying on the conspiracy allegation.  However, as

24 discussed above, the Complaint fails to allege a plausible conspiracy between Trigg and Brewer

25 and Rasmussen.[7]  Because the conspiracy allegation is being dismissed, it is appropriate to dismiss

26 the assault and battery claims as well.

27

28      [7] Relatedly, and contrary to the opposition, the allegations do not indicate Trigg and Brewer knew that a battery or assault would occur against Novak.  Further, the Court notes that Novak throughout her opposition classifies the conspiracy as one to do whatever it takes to commit T.E.  However, that allegation is not found in the complaint.

**6.**      **Eighth Cause of Action – Intentional Infliction of Emotional Distress ("IIED")**

*Defendants' Argument*

The sum of the alleged facts against Trigg and Brewer are that they tried to admit T.E. without properly filled out paperwork, that they disagreed and argued with Novak about whether T.E. should be admitted, and that they witnessed the altercation between Officer Rasmussen and Novak.  None of this conduct amounts to extreme and outrageous conduct that exceeds the bounds decency.  Without extreme and outrageous conduct, there is not liability for IIED.

*Plaintiff's Opposition*

Novak argues that when Trigg and Brewer agreed with Rasmussen to do whatever was needed to have T.E. admitted, they assisted, abetted, and worked with Rasmussen in causing severe emotional distress to Novak.  The conduct was outrageous because they encouraged and assisted Rasmussen in attacking a defenseless nurse.  Trigg and Brewer lied, misrepresented, and made false statements in violation of § 5150.  Trigg and Brewer conspired to entice and induce Rasmussen into committing acts against Novak.  Trigg and Brewer were more than bystanders.

*Legal Standard*

The elements of the tort of intentional infliction of emotional distress ("IIED") are: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009); Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993).  "'Severe emotional distress' means emotional distress of such substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it." Hughes, 46 Cal.4th at 1051; Potter, 6 Cal.4th at 1004.  Conduct is "extreme and outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Hughes, 46 Cal.4th at 1050; Potter, 6 Cal.4th at 1001.  Evidence that reflects "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" is insufficient. Hughes, 46 Cal.4th at 1051.

1   *Discussion*

2      Novak's IIED claim has not been properly pled.  The outrageous conduct identified in the

3   opposition is little more than the conspiracy itself.  The problem is that a conspiracy by itself, no

4   matter how repugnant, is not actionable.  See Applied Equipment, 7 Cal.4th at 510.  The

5   Complaint does not identify actions by Trigg or Brewer that can be legitimately characterized as

6   "extreme and outrageous."  Entering a conspiracy, and offering some unspecified type of verbal

7   encouragement, is not enough.  Furthermore, if Novak is relying on the assault and battery torts

8   allegedly committed by Officer Rasmussen, more is needed.  Although the situation is not that

9   typically associated with an assault and battery, it does not seem so far removed from a typical

10  assault and battery that it would also support an IIED claim.  Because the conduct pled is not

11  sufficiently extreme and outrageous, dismissal of this claim is appropriate.  Cf. Hughes, 46 Cal.4th

12  at 1051.

13

14  **7.      Ninth Cause of Action – False Imprisonment/False Arrest**

15      *Defendants' Argument*

16      The Complaint alleges that Novak was forcibly and falsely arrested and imprisoned by

17  Officer Rasmussen, but there are no facts stated against the Home Defendants that relate to the

18  elements of the tort.  Instead, there are only insufficient legal conclusions made.  Thus, no valid

19  cause of action is pled.

20      *Plaintiff's Opposition*

21      Novak argues that the Home Defendants are liable for this claim through the conspiracy

22  that was formed to aid, assist, and/or abet Rasmussen.

23      *Legal Standard*

24      "'False arrest' and 'false imprisonment' are not separate torts," rather "[f]alse arrest is but

25  one way of committing a false imprisonment."  Asgari v. City of Los Angeles, 15 Cal.4th 744, 752

26  n.3 (1994).  The tort of false imprisonment consists of the "'nonconsensual, intentional

27  confinement of a person, without lawful privilege, for an appreciable length of time, however

28  short."  Fermino v. Fedco, Inc., 7 Cal.4th 701, 715 (1994); Shoyoye v. County of Los Angeles,

1   203 Cal.App.4th 947, 962 (2012).  A person may be constrained or confined in various ways,

2   including physical force, threat of force or of arrest, confinement by physical barriers, or by means

3   of any other form of unreasonable duress.  Fermino, 7 Cal.4th at 715.  A police officer is not

4   civilly liable for a false arrest if at the time of arrest the officer "had reasonable cause to believe

5   that the arrest was lawful."  Cal. Pen. Code § 847(b); O'Toole v. Superior Ct., 140 Cal.App.4th

6   488, 511 (2006); see also Edgerly v. City & Cnty. of San Francisco, 599 F.3d 946, 960 (9th Cir.

7   2010).  "Reasonable cause" is determined through an objective test that asks whether the facts

8   known to the arresting officer would lead a reasonable person to have a strong suspicion of the

9   arestee's guilt.  See O'Toole, 140 Cal.App.4th at 511; see also Levin v. United Air Lines, Inc., 158

10  Cal.App.4t h 1002, 1018 (2008).

11      *Discussion*

12      There are no allegations that Trigg or Brewer even touched Novak, much less restricted her

13  movements in any way.  This cause of action rises and falls with the conspiracy allegation.

14  Because the conspiracy allegation is being dismissed, this cause of action also will be dismissed.

15

16  **8.      Tenth Cause of Action – Civil Code § 52.1**

17      *Defendants' Argument*

18      The Complaint alleges that the tortious conduct described in the previous causes of action

19  constitute a violation of California Constitution Art. I § 13, which protects citizens against

20  unreasonable searches and seizures.  However, the only acts of any defendant that could be

21  interpreted as coercive, intimidating, or threatening were done by Officer Rasmussen.  There are

22  no allegations that the Home Defendants ever knew about or concurred with any threats,

23  intimidation or coercion by any Co-Defendant.  Moreover, only Rasmussen's use of force is

24  arguably tortious.  The actual use of force is not a threat, intimidation or coercion, because those

25  concepts relate to a negative consequence that will happen in the future.  The use of force by

26  Rasmussen was in the present and had no future implications.

27      *Plaintiff's Opposition*

28      Novak argues that a § 52.1 claim may be based on coercion, which includes threats or

1    violence against a person.  As alleged, Rasmussen used violence against Novak.  Given the

2    conspiracy between Rasmussen and Trigg and Brewer, the Home Defendants are liable.

3         *Legal Standard*

4         The essence of a § 52.1 claim is that "the defendant, by the specified improper means (i.e.,

5    "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he

6    or she had the right to do under the law or to force the plaintiff to do something that he or she was

7    not required to do under the law."  Jones v. Kmart Corp., 17 Cal.4th 329, 334 (1998); Shoyoye v.

8    County of Los Angeles, 203 Cal.App.4th 947, 955-56 (2012).  Civil Code section 52.1 requires

9    "an attempted or completed act of interference with a legal right, accompanied by a form of

10   coercion."  Jones, 17 Cal.4th at 334; Austin B. v. Escondido Union School Dist., 149 Cal.App.4th

11   860, 882 (2007).  A § 52.1 plaintiff need not allege the defendant acted with discriminatory

12   animus or intent, rather a defendant is liable if he or she interfered with the plaintiff's legal or

13   constitutional rights by the requisite threats, intimidation, or coercion. See Venegas v. County of

14   Los Angeles, 32 Cal.4th 820, 841-43 (2004); Austin B., 149 Cal.App.4th at 882.  The word

15   "interferes" as used in the Bane Act means "violates."  Jones, 17 Cal.4th at 334; Austin B., 149

16   Cal.App.4th at 883.

17        *Discussion*

18        *Jones* makes clear that either an attempted or completed act of interference will suffice

19   under § 52.1.  Jones, 17 Cal.4th at 334.  It is unclear why an act of violence could not constitute a

20   completed act of coercion.  As long as the act of violence violates a plaintiff's rights, the violence

21   would be actionable under  § 52.1.  See Austin B., 149 Cal.App.4th at 883 (holding that there was

22   "no evidence of acts that could be construed as threats, violence or intimidation that actually

23   caused a loss of [plaintiff's] right to an education or that attempted to do so."); cf. Bender v.

24   County of Los Angeles, 217 Cal.App.4th 968, 978-79 (2013) (holding that an unlawful arrest

25   coupled with excessive force constituted coercion under § 52.1); Shoyoye, 203 Cal.App.4th at 959

26   ("While we are not prepared to and need not decide that every plaintiff must allege violence or

27   threats of violence in order to maintain an action under § 52.1, we conclude that the multiple

28   references to violence or threats of violence in the statute serve to establish the unmistakable tenor

1    of the conduct that § 52.1 is meant to address.").  Without authority to the contrary identified by

2    the Home Defendants, the Court disagrees that violence cannot establish a violation of § 52.1.

3    That being said, there are no allegations that Trigg and Brewer committed any acts of violence,

4    intimidation, threats, or other forms of coercion against Novak.  Instead, this claim appears to be

5    based on the conspiracy allegation.  Like other claims that are based on the conspiracy, because

6    the conspiracy claim is being dismissed, Novak's § 52.1 claim will also be dismissed.

7

8    **9.    _Respondeat Superior_ Liability of Mentor, Meridian, and Loyd**

9         The Court has resolved all of the state law claims alleged against Trigg and Brewer.  With

10   the exception of the fourth cause of action, Novak relies on _respondeat superior_ to make Mentor,

11   Meridian, and Loyd liable for the conduct of Trigg and Brewer.  Under a _respondeat superior_

12   theory, an employer is held vicariously liable for the torts committed by its employee within the

13   course and scope of employment.  Lisa M. v. Henry Mayo Newhall Mem. Hosp., 12 Cal.4th 291,

14   296 (1995).  However, an employer cannot be held vicariously liable under _respondeat superior_

15   unless the employee is found responsible, and a finding that exonerates the employee also

16   exonerates the employer.  See Lathrop v. Healthcare Partners Medical Group, 114 Cal.App.4th

17   1412, 1423 (2004); Perez v. City of Huntington Park, 7 Cal.App.4th 817, 819-20 (1992).  Here,

18   because there are no viable claims pled against Trigg and Brewer, Mentor, Meridian, and Loyd

19   cannot be held liable under _respondeat superior_.

20

21                                      **CONCLUSION**

22         As discussed above, dismissal of each of the causes of action alleged against the Home

23   Defendants is appropriate.  The Court has doubts and concerns about certain causes of action, but

24   with one exception, it is not clear to the Court that amendment would necessarily be futile.  If

25   Novak can file an amended complaint that is consistent with the analyses of this order and Rule

26   11, then she may do so.  The one exception is the negligent hiring, training, and supervision claim

27   alleged against Trigg and Brewer.  Because Trigg and Brewer are not employers, dismissal of this

28   claim will be with prejudice.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.      Defendants' motion to dismiss is GRANTED;

2.      The second through tenth causes of action are DISMISSED with leave to amend, except for the fourth cause of action against Trigg and Brewer which is DISMISSED with prejudice;

3.      Plaintiff may file an amended complaint within twenty-eight (28) days of service of this order; and

4.      If Plaintiff does not file an amended complaint, then the Court will order the Clerk to terminate Defendants Trigg, Brewer, Mentor, Meridian, and Loyd as defendants in this matter.

IT IS SO ORDERED.

Dated:   February 21, 2014

_____

SENIOR  DISTRICT  JUDGE