1
2
3
4
5

# UNITED STATES DISTRICT COURT

6
### EASTERN DISTRICT OF CALIFORNIA

7
8

NANCY JUNE NOVAK,

9
            Plaintiff,

10

   vs.

11

MERCED POLICE DEPARTMENT, *et al.*,

12
13
            Defendants.

14
           _____/

Case No. 1:13-cv-01402-BAM

**ORDER DISMISING CAREMERIDIAN, LLC FROM THIS ACTION**

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**
(Doc. 52)

15
16

      Plaintiff Nancy June Novak ("Plaintiff") filed a civil rights action against the City of Merced,

17
Merced Police Officers Rasmussen and Chavez, Sgt. Struble, The Mentor Network, Loyd's Liberty

18
Home, CareMeridian, LLC (erroneously sued as Meridian Care, LLC), Christina Trigg, Joella Brewer

19
and Does 1-25 arising from the alleged use of excessive force.[1]   This action currently proceeds on

20
Plaintiff's First Amended Complaint, filed on March 20, 2014.  Doc. 23.

21

      Presently before the Court is a motion for summary judgment brought by Defendants The

22
Mentor Network, Loyd's Liberty Homes, Inc., CareMeridian, LLC, Christina Trigg and Joella Brewer.

23
Doc. 52.  Plaintiff opposed the motion on April 29, 2016, and Defendants replied on May 6, 2016.

24
The Court heard oral argument on May 13, 2016.  Counsel Timothy Magill appeared on behalf of

25
Plaintiff Nancy Novak.   Counsel Douglas Smith appeared on behalf of Defendants The Mentor

26
Network, Loyd's Liberty Homes, Inc., CareMeridian, LLC, Christina Trigg and Joella Brewer.

27
28

---

[1]     The parties consented to the jurisdiction of the United States Magistrate Judge. Docs. 32, 33, 34.  For that reason, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. *See* 28 U.S.C.§ 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305. Doc. 35.

**I.      Dismissal of CareMeridian, LLC**

Following questioning by the Court, the parties represented that CareMeridian, LLC (erroneously sued as Meridian Care, LLC) had no relationship to or involvement in this action.  As a result, Plaintiff and Defendant CareMeridian, LLC stipulated to dismissal of CareMeridian, LLC from this action.  Based on the oral stipulation and at the request of Plaintiff, Defendant CareMeridian, LLC shall be dismissed from this action.  Fed. R. Civ. P. 41(a)(2).

**II.      Motion for Summary Judgment**

**A.  Background**

The following facts are not reasonably in dispute.[2]  In September 2012, Defendants Mentor Network and Loyd's Liberty Homes, Inc. (the "Mentor entity defendants") operated a licensed residential care facility (the "Mentor home") in Merced, California.   Doc. 52 at 8.   T.E., a developmentally disabled adult with a history of seizures, epilepsy, and who wore a helmet, was a resident of the Mentor home.  Doc. 54, Defendants' Separate Statement of Undisputed Facts ("DSF") 3, 5-6.

On the evening of September 1, 2012, T.E. started acting aggressively toward other residents and staff.  Defendant Brewer, Mentor's Qualified Mental Retardation Professional, responded to a call from the staff at the Mentor home that T.E. had become aggressive.  DSF 9-11; Doc. 55-2, Plaintiff's Separate Statement of Undisputed Facts ("PSF") 98.   There were four shifts on the weekends at the Mentor home, with the last one from 10:00 p.m. to 6:00 a.m.  Only one person worked the last shift. PSF 99.  Defendant Brewer then called Defendant Trigg, an employee of Loyd's Liberty Home with an A.S. degree in nursing, and instructed her to go to the home because T.E. was acting out and it might be an emergency.  DSF 8, 12, PSF 106, 109-110.  Defendant Trigg then went to the Mentor home and met Defendant Brewer outside.  DSF 13.  Defendant Brewer and Defendant Trigg both observed T.E.'s aggressive behaviors.  DSF 15, 19-21.

---

[2]      The facts detailed here are taken from Defendants' moving papers and Plaintiff's opposition, and construed in the light most favorable to Plaintiff. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).  The majority of these facts are based on Plaintiff's summary of an authenticated transcript of a tape recording made by Officer Rasmussen during the early evening hours of September 1, 2012.  Doc. 55-2.  The transcript is located at Plaintiff's Exhibit 6.  While not all of the facts are considered material, they provide a background of the events taking place on September 1, 2012. Material disputed and undisputed facts are discussed in detail where relevant to the Court's analysis of a specific cause of action.  Unless otherwise noted, the parties' objections to evidence are overruled.

T.E. was physically restrained at the Mentor home because of his aggressive actions towards other patients and staff members at the residence, epileptic seizures, retardation and other physical problems.  DSF 22.  Defendant Trigg was able to do a nursing assessment of T.E., which did not reveal any evidence of a physical or medical condition being the cause of T.E.'s unusual behavior. DSF 23-24.

Defendant Trigg called Joann Bolton, R.N., Mentor's on-call nurse, and explained the situation, including T.E.'s aggressive behaviors and absence of any injury to explain the behaviors. DSF 26-28.

A person named "Joala" called 911 at 8:23 p.m. to report that T.E. was attacking clients and staff.  PSF 102.  When the phone call was made, T.E. already had been strapped in his wheelchair. Defendant Brewer was unsure if T.E. had his helmet on at the time.  PSF 103.  Merced City Police Officers Rasmussen and Jeremy Salyers arrived at the Mentor home at approximately 8:28 p.m.  PSF 104.  Defendant Trigg talked with the officers and told them that she was the nurse at the facility.  PSF 112.  Defendant Trigg also told Officer Rasmussen that they only had one girl that worked the night shift and they were concerned that T.E. would choke someone when no one else was around.  PSF 115.  Defendant Brewer told Officer Rasmussen that she believed they should call Rigg's Ambulance Service to take T.E. to the hospital for a full medical examination.  Officer Rasmussen responded that it would be "absolutely canceling us."  Defendant Trigg then told Officer Rasmussen that she would check to see if they were going to use the ambulance, and the reason they called the police dispatch was so that they could use the officers rather than Rigg's Ambulance.  Officer Rasmussen then explained to Officer Salyers that they were going to check and see if they could get the medication and things together so they could put a hold on T.E. and take him to Marie Green because in an hour so he would start going "berserk."  PSF 116.  Marie Green, located in Merced, is a County of Merced in-patient psychiatric facility and crisis center run by the County's Department of Mental Health.  DSF 1; Pl's First Amend. Compl. ¶ 18.

Defendant Brewer told the officers that T.E. had not been this aggressive before.  PSF 116. Defendant Brewer also stated that T.E. was strapped in a wheelchair with a helmet on because he suffered from gran and mal seizures.  Defendant Brewer said they wanted the officers to take T.E. to

Marie Green because she did not want him to hurt the other patients.  PSF 118.  Officer Rasmussen asked if they were trained in self-defense.  Defendant Brewer indicated they were an absolute no-restraint facility.  PSF 119.  Defendants Brewer and Trigg asked Officer Rasmussen if they should get all of T.E.'s medications in a medic-grocery bag and also his PRNs.  PSF 120.

While waiting to get the okay to take T.E.'s medications, Officer Rasmussen discussed with Defendants Trigg and Brewer about using the Mentor home van to transport T.E. because he was in a wheelchair and they could strap him down in the back of the van.   Officer Rasmussen did not want to take T.E. out of the wheelchair because he could start kicking and flailing, causing injury or harm.  There was discussion between Defendants Trigg and Brewer and Officer Rasmussen about transporting T.E. and that it would be safer for everybody.  Officer Rasmussen stated, "Your safety is paramount."  PSF 123.  Defendant Trigg then stated that T.E. had a very bad medical experience in April from a hospital stay.  PSF 124.

Prior to leaving the Mentor home, Officer Rasmussen asked Officer Salyers for a form, but he was not sure if it was the face page form for his reports or the Welfare & Institutions Code § 5150 form for placing a hold and transporting someone for a 72 hour involuntary hold to a facility, such as Marie Green.  PSF 127.  At this point, Officer Rasmussen had made the decision to put a hold on T.E. and have him admitted into Marie Green as a Welfare & Institutions Code § 5150.  PSF 128.  Upon receiving the radio call, and before arriving at the Mentor home, Officer Rasmussen was told by dispatch that this was a "5150" call for service.  He also was told that it was for an aggressive person in a home.  PSF 129.  Before leaving the Mentor home, Officer Rasmussen had a conversation with Officer Salyers, stating "This is a first one for me."  Officer Rasmussen meant that it was the first time he was taking someone to Marie Green strapped to a wheelchair with a helmet on his head.  PSF 130.

Defendants Trigg and Brewer left the Mentor home, with Defendant Trigg driving the van, to go to Marie Green.  Officer Rasmussen also left and requested dispatch to notify Marie Green of an involuntary and that they were in route.  PSF 125.  The service detail report indicated that at 9:15 p.m., Officer Rasmussen notified dispatch to notify Marie Green that he had an involuntary, and "we will be in route."  PSF 125.  They arrived at Marie Green at approximately 9:46 p.m.  PSF 125.  After arriving at Marie Green's parking lot, Officer Rasmussen told Defendants Brewer and Trigg to stay in the van

with T.E., and he contacted Plaintiff, a Psychiatric Staff Nurse II for the County of Merced, working at Marie Green.  PSF 126; DSF 2; First Amend. Compl. ¶¶ 17-18.  Officer Rasmussen told Plaintiff that they had an adult in a wheelchair with a mental capacity of a two-year old, was epileptic and was violently attacking staff.  PSF 131.  Plaintiff inquired about the seizure disorder and the Dilantin levels.  Officer Rasmussen told her that the two caregivers, Defendants Trigg and Brewer, could tell her everything and that they only had one staff member on that night.  They were afraid that the night person would be choked.  Plaintiff then asked, so in other words, their inadequate staffing is enough to have him admitted.  Plaintiff further told Officer Rasmussen that Marie Green could not keep T.E. if he could not ambulate and get out of the building in case of a fire or emergency.  PSF 132.  Officer Rasmussen then said this was a first one for him.  He explained in his deposition that it was the first time he had brought someone for a 5150 evaluation that was restrained in a wheelchair, like T.E.  PSF 133.

Plaintiff and Defendants Brewer and Trigg had a discussion in which Plaintiff said that there was nothing that Marie Green could do, so she would call Dr. Manuel and see was she wanted her do.  Defendant Trigg responded that T.E. could not stay with them and that they did not know where to take him.  PSF 134.  Plaintiff explained that it was a job for T.E.'s advocate, not Officer Rasmussen or someone having inadequate staffing.  PSF 134.  Plaintiff asked how long T.E. had been violent and acting out.  Officer Rasmussen interrupted, comparing the situation to juvenile houses.  Plaintiff tried to correct Officer Rasmussen by saying that it was different from patients at Marie Green.  Officer Rasmussen continued interrupting.  Defendant Brewer interrupted and stated that T.E. had only been aggressive in the last few months.  Plaintiff then asked if it was related to his brain disorder.  PSF 135.

There are additional discussions, and finally Defendant Trigg stated that she was an LVN, not RN.  Plaintiff kept asking both Defendants Trigg and Brewer whether there was an increase in T.E.'s intracranial pressure which would cause the aggression.  Officer Rasmussen interrupted, stating Plaintiff was not listening to the answer from the two women.  Plaintiff responded to Officer Rasmussen that she was talking to the nurse.  Defendant Brewer stated that there were two main diagnoses—mental retardation and seizures.  PSF 136.  After further discussion, Plaintiff stated that she wanted to make sure that she understood what T.E.'s medical conditions were so she could talk

with the Medical Director.  She did not want to create a problem for Marie Green.  Plaintiff also did not think that Marie Green was set up to take care of T.E.  It did not look like he had a disability as a result of a mental health diagnosis—it was a medical or physical ailment.  PSF 137.

Defendant Brewer got on the phone with a nurse, and she wanted Plaintiff to get on her cell phone with the nurse.  While Plaintiff started talking to the nurse, Officer Rasmussen called Defendants Trigg and Brewer over to him and told them, "I want to find out what's going on."  PSF 138.  Plaintiff was overhead talking on the phone with the person alleged to be a nurse stating that they were a mental health facility and could not keep T.E. against his will as a result of a physical ailment and not the result of a mental health disability.  PSF 139.  Plaintiff stated on the cell phone with unknown nurse that if they were going to claim that he was schizophrenic that was something that she could discuss with the Medical Director.  PSF 140.  While talking with Officer Rasmussen and Defendant Brewer, Defendant Trigg stated, "I'm sorry she's being so rude to you, by the way."  Officer Rasmussen said, "That's okay."  Defendant Brewer said, "Yeah, I am, too."  Defendant Trigg then stated, "Thank you for staying with us."  Defendant Brewer also thanked him.  Officer Rasmussen believed Plaintiff was not being rude with him.  He did not recall any actions or demeanor that would indicate that she was being rude to him at all.  PSF 142.

While Plaintiff was still on the phone with this unknown person, she stated that that she was concerned T.E. would not be able to walk out of the building if there was a fire or other emergency and she did not think that the administrator of Marie Green would allow her to admit him.  Defendant Trigg interrupted and said that T.E. could walk.  Officer Rasmussen stated with a raised voice, "You can lead him out."  Plaintiff responded to Officer Rasmussen by stating that she did not know what she had done, but he was getting really hostile and angry with her.  Officer Rasmussen responded in a louder voice, "Then talk to the young lady and get this figured out."  PSF 143.  While on the phone, Plaintiff responds, "I have to deal with this Officer now because he is being very hostile with me. I have to figure out what's going on with him mentally, because obviously I've done something to piss him off."  PSF 143.

Officer Rasmussen then told Defendants Trigg and Brewer, "Let me talk to you for a second."

6

In response to an inaudible comment,[3] Officer Rasmussen stated, "No, I can't do that." Officer Rasmussen then asked about the need to get a medical clearance before bringing T.E. to Marie Green. PSF 144.

During the time Plaintiff was on the phone, Officer Rasmussen asked Defendants Trigg and Brewer to come over to his location. Defendant Trigg said, "(Inaudible) no clearance needed, 5150 has to Marie Green." Officer Rasmussen responded saying, you had medical personnel telling you guys that you don't need to have a medical clearance, and now we're getting conflicting statements. Defendant Trigg agreed. Officer Rasmussen then stated, "So I am kind of curious if we can trump that or not. I don't know. Let me try to find out. Not a problem." PSF 146. At his deposition, Officer Rasmussen clarified that he was trying to confirm with Sgt. Struble that he could trump Plaintiff's position, something he could do legally with placing a hold through WIC 5150 on T. E. so he could require Nurse Novak to admit T.E. into Marie Green. PSF 148.

Officer Rasmussen then called Sgt. Struble and confirmed that the police department § 5150 hold can trump the decision by Plaintiff to preclude T.E. from entering Marie Green. In his deposition, Officer Rasmussen agreed that Sgt. Struble told him that Marie Green had to accept the § 5150 hold and accept T.E. into Marie Green. PSF 150.

Plaintiff stated that Dr. Manuel was the Medical Director and that they could not accept T.E. and Officer Rasmussen's sergeant could not force her to do so. Officer Rasmussen responded that Sgt. Struble said that she had to take him. Plaintiff stated that he could talk to her boss. Officer Rasmussen then relayed that over the phone, calling Dr. Manuel a man. Plaintiff responded by saying it is a female and that "you know, women can sometimes be . . . ." Officer Rasmussen then yelled, "Get out of my face." Plaintiff said, "Do you know what . . . ." A scuffling ensued and Officer Rasmussen's recording stopped. Officer Rasmussen testified at his deposition that he told Plaintiff to get out of his face because Plaintiff lunged at him and had her finger pointed at him. When Plaintiff's finger came within inches of his face, he grabbed her arm and brought it behind her back, twisting her

---

[3]	Plaintiff asserts that either Defendant Trigg or Defendant Brewer stated, "What you can do is use your tazer" [on Plaintiff]. However, the audio recording transcript states "Inaudible." Pl's Ex. 6 at 35:14. After hearing the audio at his deposition, Officer Rasmussen clarified that he heard ". . . with you . . ." and then the words, ". . . you can use your tazer." Pl's Ex. 8 at 155:18-23.

in a clockwise direction and pushing her towards the back of the patrol car.  PSF 151.  When Officer Chavez talked with Officer Rasmussen about the incident, Officer Rasmussen told him, "I was on the phone with Sgt. When all of a sudden she started rushing at me.  And I'm like really? Doggonit."  PSF 151.

Officer Rasmussen asked a person who came out from Marie Green if they had a video surveillance camera.  He was surprised that they did not.  Officer Rasmussen did not know that Plaintiff had urinated on herself during the scuffle between them.  PSF 153.

When Dr. Manuel arrived, she informed Defendants Brewer and Trigg, Officers Rasmussen and Chavez and Sgt. Struble that the reason T.E. could not be placed at Marie Green was because they could not take someone with medical disabilities and they could not receive someone with medical issue or disabilities.  Dr. Manuel indicated that T.E.'s caregiver, Central Valley Rehabilitation Center, had to make the determination and decide what they were going to do with him.  He could not be admitted into Marie Green.  Dr. Manuel suggested that Defendant Brewer or Defendant Trigg call CVRC and find out where they wanted to take T.E.  Defendants Brewer and Trigg thanked Dr. Manuel for explaining it to them.  PSF 154.

Officer Rasmussen could not recall whether he filled out the Welfare & Institutions Code § 5150 from.  PSF 158.  Plaintiff testified that she was never provided a form from Officer Rasmussen or Defendants Brewer and Trigg.  PSF 161.

Marie Green did not accept T.E., so Mentor staff took T.E. to Mercy Hospital, where he was admitted.  DSF 75.

On August 30, 2013, Plaintiff commenced the instant action.  Plaintiff forwards the following claims against Defendants Trigg, Brewer and the Mentor entity defendants:  (1) Negligence; (2) Negligent Hiring, Supervision, Retention; (3) Violation of Penal Code § 148, Negligence Per Se; (4) Assault; (5) Battery; (6) Intentional Infliction of Emotional Distress; (7) False Imprisonment/False Arrest; and (8) Violation of Civil Code § 52.1.  In conjunction with these claims, Plaintiff alleges that Defendants Trigg and Brewer engaged in a conspiracy with Officer Rasmussen to have T.E. illegally admitted to Marie Green by any means necessary.  Defendants Trigg, Brewer and the Mentor entity defendants have moved for summary judgment on these claims, including Plaintiff's allegations of a

1    conspiracy.

2        **B.  Legal Standard**

3        Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any

4    affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is

5    entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect

6    the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

7    248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a

8    verdict for the nonmoving party." *Id.*

9        The party seeking summary judgment "always bears the initial responsibility of informing the

10   district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

11   answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

12   demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317,

13   323 (1986).  The exact nature of this responsibility, however, varies depending on whether the issue

14   on which summary judgment is sought is one in which the movant or the nonmoving party carries the

15   ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If

16   the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable

17   trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In

18   contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely

19   by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

20       If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in

21   its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a

22   jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in

23   original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929;

24   *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When

25   the moving party has carried its burden under Rule 56[], its opponent must do more than simply show

26   that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record

27   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

28   'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities*

1    *Serv. Co.*, 391 U.S. 253, 289 (1968)).

2        In resolving a summary judgment motion, "the court does not make credibility determinations

3 or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the

4 [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor."

5 *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party

6 must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v.*

7 *Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

8 1987).

9      **C.  Discussion**

10         **1.  Conspiracy Allegations**

11        Plaintiff alleges that Defendants Trigg and Brewer conspired with Officer Rasmussen "to have

12 T.E., who was medically injured, be illegally admitted to Marie Green" in violation of California

13 Welfare & Institutions Code § 5150 ("§ 5150").  First Amend. Compl. at ¶ 43.  To that end, Plaintiff

14 asserts that Defendants Trigg and Brewer intentionally provided her with false information in

15 agreement with Officer Rasmussen to have T.E. admitted to Marie Green.  Plaintiff contends that

16 Defendants Trigg and Brewer wanted to have T.E. admitted, not because of any mental disorder, but

17 because they could not take care of him, did not have the proper licensing, they were understaffed and

18 they failed to have the proper training, education and knowledge to take care of T.E.  Plaintiff also

19 alleges that Defendants agreed, or implicitly agreed, that Plaintiff would be attacked in the

20 performance of her duties as a Licensed EMT and psychiatric nurse in violation of California Penal

21 Code § 148, and that Defendants conspired to cover up the alleged excessive use of force, violence

22 and harm.[4]  First Amend. Compl. at ¶ 43.

23      *Legal Standard*

24        "The elements of an action for civil conspiracy are (1) formation and operation of the

25 conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the

26 common design." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1062 (2006).  "Under a conspiracy theory of

27

28

---

[4]       Plaintiff appears to have abandoned her allegations concerning a conspiracy to cover up the alleged use of force, violence and harm.  Accordingly, the Court does not address these allegations.

recovery, liability depends on the actual commission of a tort." *See Navarette v. Meyer*, 237 Cal.App.4th 1276, 1291 (2015); *see also Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510 (1994); *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1582 (1995) ("the basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act").  "Liability 'presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty.'" *Navarette*, 237 Cal.App.4th at 1292 (citation omitted).  For conspiracy liability, the conspirators also must have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. *See Navarette*, 237 Cal.App.4th at 1292*; Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 785 (1979); *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1582 (1995).  The conspirators "must agree to do some act which is classified as a civil wrong." *Youst v. Longo*, 43 Cal.3d 64, 79 (1987).

     *Analysis*

     The evidence is insufficient as a matter of law to support liability of Trigg and Brewer on a theory of civil conspiracy.  At its core, Plaintiff's conspiracy theory is premised on a purported agreement between Defendants Trigg and Brewer and Officer Rasmussen to have T.E. illegally admitted to Marie Green in violation of § 5150.  Critically, however, Plaintiff has not identified any legal duty that Defendants Trigg and Brewer (or Officer Rasmussen) owed to Plaintiff in connection with T.E.'s admission to Marie Green pursuant to § 5150.  For co-conspirator liability to attach, defendants must owe an independent duty to plaintiff recognized by law.  *See, e.g.*, *Lingad v. Indymac Federal Bank*, 682 F.Supp.2d 1142, 1150 (E.D. Cal. 2010) (conspirator cannot be liable unless he personally owed a duty of care to plaintiff that was breached); *Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, 405 F.Supp.2d 1141, 1148 (C.D. Cal. 2005); *Navarette*, 237 Cal.App.4th at 1292; *Kasparian v. County of Los Angeles*, 38 Cal.App.4th 242, 266 (1995) (reversing judgment against defendants who owed no legal duty to plaintiff).

     The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide. *Vasquez v. Residential Invs., Inc.,* 118 Cal. App. 4th 269, 278 (2004).  It must appear that the statute (or ordinance or regulation) at issue was intended to create a

1    duty of care. *Rosales v. City of Los Angeles*, 82 Cal.App.4th 419, 430, 98 Cal.Rptr.2d 144, 151 (2000).

2    "Where civil liability is predicated upon a legislative provision, plaintiffs must establish that they fall

3    within the class of persons for whose protection the legislative provision was enacted. The statute must

4    be designed to protect against the kind of harm which occurred." *Starbucks Corp. v. Super. Ct*., 168

5    C.App.4th 1436, 1448, 86 Cal. Rptr. 3d 482, 490 (2008).

6         Here, Plaintiff has failed to identify any independent duty owed to her, as a psychiatric nurse

7    working for the County of Merced at Marie Green, arising from the detention of a person for

8    evaluation pursuant to § 5150.  In September 2012, § 5150 provided in part for the 72-hour

9    involuntary admission of an individual who, "as a result of a mental health disorder, is a danger to

10   others . . . ."  Cal. Welf. & Inst. Code § 5150(a).  The procedures and protections created by § 5150

11   were designed to protect those to be taken into custody for short-term emergency evaluation and

12   treatment, such as T.E.  *See* Doc. 21 at 14; *see also Jacobs v. Grossmont Hosp.*, 108 Cal.App.4th 69,

13   75 (2002) (intent of Lanterman-Petris-Short Act, of which § 5150 is a part, is "to end the

14   inappropriate, indefinite and involuntary commitment of mentally disordered persons, to provide

15   prompt evaluation and treatment and to protect mentally disordered persons (§ 5001)"); *Michael E.L.*

16   *v. County of San Diego*, 183 Cal.App.3d 515, 525 (1983) (same); Cal. Welf. & Inst. Code § 5001.

17   There is nothing to suggest that § 5150 was designed for the protection of personnel at a mental health

18   facility like Marie Green.  Plaintiff has not made any argument or presented any evidence that §5150

19   is intended to protect the mental health facility or the personnel who staff the facility in any way.

20        Rather, although the legislative intent underlying § 5150 does not support Plaintiff's position,

21   Plaintiff urges the Court to find that Defendants Trigg and Brewer had an independent duty under §

22   5150(d) to provide true and correct statements to Plaintiff supporting probable cause for detaining T.E.

23   for evaluation.  In relevant part, § 5150(d) imposes civil liability on a person for "intentionally giving

24   a statement that he or she knows to be false" to support probable cause that a person is, as a result of a

25   mental health disorder, a danger to others.  Cal. Welf. & Inst. Code § 5150(d).  While § 5150(d)

26   imposes an apparent duty of care to provide truthful statements, Plaintiff has not demonstrated that any

27   such duty inures to the benefit of Plaintiff or that she could maintain a private cause of action based on

28   § 5150(d).  Notably, and as discussed above, § 5150 protects against the harm resulting from the

inappropriate involuntary commitment of mentally disordered persons.  Thus, any duty of care arising from § 5150, including the obligation to provide true and correct statements, is owed solely to the person for whom involuntary commitment is sought.  Plaintiff has presented no case authority establishing that § 5150 creates a duty of care owed to any other person, such as a psychiatric nurse receiving or accepting a person for involuntary commitment.  Moreover, the injury allegedly suffered by Plaintiff at the hands of Officer Rasmussen is simply not the sort of foreseeable harm that § 5150 was designed to prevent.  *See*, *e.g.*, *Navarette*, 237 Cal.App.4th at 129-93.  Accordingly, the Court finds that Defendants Trigg and Brewer owed no duty of care to Plaintiff under § 5150 and all of Plaintiff's claims dependent upon such a duty fail.

Even if the Court accepted Plaintiff's proposition that Defendants Trigg and Brewer owed Plaintiff a duty of care arising under § 5150(d), Plaintiff has failed to present any evidence from which it can be reasonably inferred or established that Defendants Trigg and Brewer made any false statements to her in an effort to improperly admit T.E. to Marie Green.  In her opposition, Plaintiff asserts that Defendants Trigg and Brewer's allegedly false statements included "that T.E. did not need medical clearance before being admitted; that T.E. was schizophrenic; that mental retardation qualified under Welfare & Institution Code § 5150 as a mental disability/illness; that T.E. was in his 40s when he was 52 years old; that they had a no-restraint facility."  Doc. 55 at 22.  Plaintiff additionally contends that Defendant Trigg falsely told Plaintiff that T.E. was schizophrenic and that Defendant Brewer falsely told Plaintiff that T.E. could be admitted and claimed that mental retardation was a mental disability.  Doc. 55 at p. 23.  However, Plaintiff has cited no evidence supporting these allegedly false statements.  Indeed, there is no declaration from Plaintiff or reference to deposition testimony attesting to these purportedly false statements and there is no citation to any portion of the transcript of the recording made by Officer Rasmussen contemporaneous with the events at issue identifying any false statements made by Defendants Trigg and Brewer to Plaintiff.

Having reviewed the transcript of the recording made by Officer Rasmussen, which is the sole evidence presented by Plaintiff, the Court finds no support for Plaintiff's position that Defendants Trigg or Brewer made any false representations to Plaintiff.   Neither Defendant Trigg nor Defendant Brewer told Plaintiff that no medical clearance was needed for a 5150 hold.  Similarly, neither

Defendant Trigg nor Defendant Brewer told Plaintiff that mental retardation qualified as a mental health disorder under § 5150.  At best, the evidence reflects that Defendant Brewer informed Plaintiff of T.E.'s two main diagnoses consisting of mental retardation and seizures.  Pl's Ex. 6 at 27:15-16.  Simply relaying information to Plaintiff about T.E.'s diagnoses is not a representation that mental retardation is a qualifying mental health disorder under § 5150.

Plaintiff also has presented no evidence that Defendant Trigg or Defendant Brewer told Plaintiff that T.E. had a mental illness or was schizophrenic.  According to Plaintiff's deposition testimony, Defendant Trigg reportedly asked, "How do you know he doesn't have schizophrenia?"  Defs' Ex. 3, Pl's Depo. at 184:25-185:8.  Yet, such a query is not a representation by Defendant Trigg that T.E. suffered from schizophrenia.  Plaintiff also has presented no evidence that Defendant Trigg or Defendant Brewer falsely told Plaintiff that T.E. was in his 40s or that such a statement would have any bearing on a § 5150 hold. *See generally* Pl's Ex. 6.  To the extent Plaintiff contends that Defendants stated the Mentor home was a "no restraint" facility, Plaintiff's reference to a behavior management policy is not sufficient to establish any knowingly false statement.  Plaintiff provides no evidence regarding the licensing of the Mentor home or to demonstrate that Defendants were permitted to use restraints on residents of the Mentor home.  The Court concludes that Plaintiff's illogical and attenuated interpretation of the transcript does not raise a justifiable inference for presentation to a jury.

To the extent Plaintiff's conspiracy theory is premised on an agreement that Plaintiff would be attacked in the performance of her duties as a Licensed EMT and psychiatric nurse in violation of Penal Code § 148, the evidence is insufficient as a matter of law to support liability on such a theory.  As a practical matter, whether or not Plaintiff was working as a nurse or an EMT, the evidence fails to demonstrate the necessary agreement to batter, attack or physically injure Plaintiff.  Liability for civil conspiracy requires an agreement to commit wrongful acts.  *Gonzalez v. Alliance Bancorp.*, 2010 WL 1575963, *8 (N.D. Cal. Apr. 19, 2010).  Here, it is undisputed that the parties did not reach any agreement to physically harm Plaintiff.  In her opposition, Plaintiff asserts that Defendant Trigg and/or Defendant Brewer told Officer Rasmussen, "We'll be with you, and you can use your tazer."  Doc. 55 at 15.  In her separate statement of undisputed facts, Plaintiff alternately asserts that either Defendant

Trigg or Defendant Brewer stated, "What you can do is use your tazer" [on Nancy Novak].  PSF 144 [Doc. 55-2].  Despite Plaintiff's assertions, there is nothing in the record supporting either of these statements.  The transcript of the recording and Officer Rasmussen's deposition testimony are, at most, inconclusive.  Nonetheless, even assuming Defendant Trigg or Defendant Brewer told Officer Rasmussen to use his "tazer," Officer Rasmussen neither agreed to use his taser nor used his taser.  Indeed, in his response to the purported taser comment, Officer Rasmussen unequivocally stated, "No, I can't do that.  Can't do that."  PSF 144; Pl's Ex. 6 at 35:15-16.  Based on Officer Rasmussen's express rejection, there is no evidence from which a reasonable jury could find that Officer Rasmussen and Defendants Trigg and Brewer reached an agreement to batter, attack or injure Plaintiff.  Moreover, there is no evidence to establish that Defendants Trigg and Brewer had any actual knowledge that Officer Rasmussen would engage in a physical altercation with Plaintiff at some later point.  The formation of a conspiracy requires each conspirator have "actual knowledge" that a tort is planned *Kidron*, 40 Cal.App.4th at 1582.

For these reasons, the Court finds that Defendants Trigg and Brewer are entitled to summary judgment on Plaintiff's allegations of a conspiracy.  Thus, any claim based upon Plaintiff's conspiracy allegations must fail.  In what follows, the Court addresses Plaintiff's claims insofar as they are independent of any asserted conspiracy.

## 2.  Third and Fifth Causes of Action – Negligence & Negligence Per Se

In the first amended complaint, Plaintiff alleges that Defendants Trigg and Brewer negligently caused injury to Plaintiff and "their body contacted Plaintiff's person in a harmful manner."  First Amend. Compl. at ¶ 68.  Plaintiff also includes allegations that Defendants agreed to improperly commit T.E. under § 5150 and that Defendants interfered with the performance of Plaintiff's duties as a nurse and EMT.  First Amend. Compl. at ¶¶ 70-72.

By way of their motion for summary judgment, Defendants Trigg and Brewer argue that they owed no duty to Plaintiff to prevent Officer Rasmussen from engaging with, restraining her, and using force.  Defendants also argue that there was no negligent touching of Plaintiff by Defendants.  Defendants further argue that Plaintiff cannot recover under a theory of negligence per se for any purported violations of § 5150 because she was not in the class of persons protected by the statute.

1   Defendants similarly argue that Plaintiff cannot recover under a theory of negligence per se for any
2   purported violations of Penal Code §148, as there is no indication Plaintiff was acting as an EMT on
3   the night in question.

4   *Legal Standards*

5           a.   Negligence

6           To prove negligence, a plaintiff must establish: (1) the existence of a duty of care; (2) breach of
7   that duty; (3) causation; and (4) damages. *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996);
8   *Brown v. Ransweiler*, 171 Cal.App.4th 516, 534 (2009).   The "existence of a duty of care owed by a
9   defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed.*
10  *Savings & Loan Assn.,* 231 Cal.App.3d 1089, 1095 (1991).   Whether a duty of care exists in a
11  particular case is a question of law to be resolved by the court.   *Brown*, 171 Cal.App.4th at 534;
12  *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 57-58 (1998).

13          b.   Negligence Per Se

14          The doctrine of negligence per se creates an evidentiary presumption, not a separate cause of
15  action. *Johnson v. Honeywell Intl., Inc.*, 179 Cal.App.4th 549, 555 (2009).   Negligence per se "allows
16  proof of a statutory violation to create a presumption of negligence in specified circumstances." *Elsner*
17  *v. Uveges*, 34 Cal.4th 915, 927 (2004). California Evidence Code Section 669(a) provides that the
18  "failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or
19  regulation of a public entity; (2) The violation proximately caused death or injury to person or
20  property; (3) The death or injury resulted from an occurrence of the nature which the statute,
21  ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury
22  to his person or property was one of the class of persons for whose protection the statute, ordinance, or
23  regulation was adopted." Cal. Evid. Code § 669(a).   The first two elements of negligence per se are
24  normally considered questions for the trier of fact, while the last two elements are determined by the
25  court as a matter of law. *See Ramirez v Nelson*, 44 Cal.4th 908, 918 (2008).

26          *Analysis*

27          Plaintiff has failed to establish, as a matter of law, the existence of a duty of care owed to her
28  by Defendants Trigg and Brewer.   The primary issue for the Court to decide is whether Defendants

Trigg and Brewer had a legal duty to protect Plaintiff from injury at the hands of Officer Rasmussen.[5] Under negligence principles, a person generally has no duty to protect another from harm in the absence of a special relationship or custody or control.  *See Nally v. Grace Cmty. Church*, 47 Cal.3d 278, 293 (1988).  Plaintiff's argument that Defendants Trigg and Brewer had a duty to intervene in Officer Rasmussen's use of force and/or arrest of Plaintiff is untenable.  Plaintiff has presented no evidence demonstrating that she was in a special relationship with or in the custody or control of Defendant Trigg or Defendant Brewer.  Furthermore, no independent legal duty exists for a citizen to intervene while a police officer is engaged in the apparent discharge of his duties.  To the contrary, criminal penalties may be imposed in the event a person interferes with a police officer in the discharge of his or her duties.  *See* Cal. Penal Code § 148 (interfering with a police officer in the discharge of his duties punishable by fine or imprisonment).

Plaintiff also attempts to invoke the provisions of § 5150 in order to establish a duty of care. Specifically, Plaintiff argues that Defendants Trigg and Brewer owed Plaintiff a duty to provide truthful statements supporting a probable cause determination for T.E.'s involuntary commitment to Marie Green and that they also owed Plaintiff a duty to provide the appropriate paperwork for an involuntary commitment under § 5150.  Doc. 55 at 27; Cal. Welf. & Inst. Code §5150(d).  However, as discussed in connection with Plaintiff's conspiracy allegations, any statutory duties arising under § 5150 are owed to the persons for whom involuntary commitment is sought.  *See Jacobs*, 108 Cal.App.4th at 75.  Plaintiff has not presented case law, facts or evidence which plausibly support the existence of a legal duty of care arising under § 5150 that is owed to her as an admitting psychiatric nurse at Marie Green or to personnel at a mental health facility designated by the county for evaluation and treatment of mentally disordered persons.  In the absence of such a legal duty of care, Defendants Trigg and Brewer cannot be liable to Plaintiff for negligence premised on § 5150   *See Richards v. Stanley*, 43 Cal.2d 60, 63 (1954) ("It is an elementary principle that an indispensable factor of liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the

---

[5]     Although Plaintiff alleged that Defendants Trigg and Brewer negligently "contacted Plaintiff's person in a harmful manner," it is undisputed that neither Defendant Trigg nor Defendant Brewer touched Plaintiff in any manner—negligent or otherwise. Defs' Ex. 3, Pl's Depo. at 182:20-24.  Thus, Plaintiff's claim of negligent touching fails.  For this same reason, Plaintiff's arguments arising under California Penal Code §§ 242 and 243, which impose criminal liability for battery, also fail.

person injured, or to a class of which he is a member.").

Similarly, Plaintiff cannot rely on any purported violations of § 5150 by Defendants Trigg or Brewer to create an evidentiary presumption of negligence per se.  In order to establish negligence per se, Plaintiff must belong to the class of persons for whose protection the statute was adopted. *See Ramirez*, 44 Cal.4th at 917-18.  Plaintiff has not established that she is in the class of persons that § 5150 was designed to protect.  She also has not established that the alleged injury sustained at the hands of Officer Rasmussen resulted from an occurrence that § 5150 was designed to prevent.  Cal. Evid. Code § 669(a)(3).

In her fifth cause of action for negligence per se, Plaintiff also attempts to establish a duty arising from a purported violation of Penal Code § 148.  Penal Code § 148 creates a misdemeanor for those who willfully resist, delay, or obstruct an emergency medical technician ("EMT") in the discharge or attempted discharge of a duty of his or her office or employment.  Cal. Pen. Code § 148(a).  While EMTs are expressly protected by § 148, Plaintiff has cited no cases extending the classification of EMTs to individuals serving in an administrative capacity, such as Plaintiff's position at Marie Green.  There also is no evidence demonstrating that she was acting as an EMT during the course of events at issue, irrespective of any EMT certification.  As Plaintiff is not within the protected class, she cannot utilize § 148 for negligence per se. *See Ramirez*, 44 Cal.4th at 917-18.

Even assuming *arguendo* that Plaintiff fit within the protected class of § 148, Plaintiff has failed to demonstrate that Defendants Trigg and Brewer violated the statute.  At best, Plaintiff has alleged verbal statements or objections directed at Plaintiff by Defendants Trigg and Brewer.  However, § 148 does not allow for punishment of individuals for conduct protected by the First Amendment, including the use of abusive language or verbal criticism. *See*, *e.g.*, *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1174 (9th Cir. 2013) (even though the police may dislike being the object of abusive language, section 148 does not allow them to use the awesome power which they possess to punish individuals for conduct that is not only lawful, but which is protected by the First Amendment); *In re Muhammed C.*, 95 Cal.App.4th 1325, 1330 (2002) ("Although section 148 proscribes resisting, delaying, or obstructing a police officer, the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."); *People v. Quiroga*,

18

16 Cal.App.4th 961, 966 (1993); *see also Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990).

For these reasons, the Court finds that Defendants Trigg and Brewer are entitled to summary judgment on Plaintiff's claims of negligence and negligence per se.

### 3. Fourth Cause of Action – Negligent Hiring, Supervision and Retention

Plaintiff contends that the Mentor entity defendants were negligent in the hiring and supervision of Defendants Trigg and Brewer because they were unfit and incompetent to care for T.E. and they were not properly trained to assess him under § 5150 for admission to Marie Green.

*Legal Standards*

"California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Doe v. Capital Cities*, 50 Cal.App.4th 1038, 1054 (1996); *see also Phillips v. TLC Plumbing, Inc*., 172 Cal.App.4th 1133, 1139 (2009). "Liability for negligent hiring and supervision is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339-40 (1998).  In California, this tort has developed "in factual settings where the plaintiff's injury occurred in the workplace, or the contact between the plaintiff and the employee was generated by the employment relationship."  *Id.* Negligence liability will be imposed upon the employer only if it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Doe*, 50 Cal.App.4th at 1054; *see also Delfino v. Agilent Technologies, Inc*., 145 Cal.App.4th 790, 815 (2006). Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability.  *Delfino*, 145 Cal.App.4th at 815.

*Analysis*

As an initial matter, Plaintiff's fourth cause of action for negligent hiring, supervision, and/or retention has been dismissed with prejudice as to Defendants Trigg and Brewer.  Doc. 21.  Plaintiff cannot revive this cause action by way of her opposition to the motion for summary judgment.

As for the Mentor entity defendants, Plaintiff has failed to establish the existence of a legal

duty owing to Plaintiff by the Mentor entity defendants.  Plaintiff's alleged injury did not occur at the Mentor home and Plaintiff had no business relationship with the Mentor entity defendants.  Further, there is no evidence that Plaintiff's alleged injury, occurring at the hands of Officer Rasmussen, arose out of, or was in any way connected with the employment of Defendants Trigg and Brewer by the Mentor entity defendants.  *See Delfino*,145 Cal.App.4th 790 at 815-816.

Even if the Court were to assume the existence of a duty, Plaintiff has presented no evidence that the Mentor entity defendants breached any such duty.  Importantly, Plaintiff has not presented any evidence demonstrating that the Mentor entity defendants knew or should have known that hiring Defendants Trigg and Brewer posed a particular risk or hazard to Plaintiff at the hands of Officer Rasmussen.  *See Delfino*, 145 Cal.App.4th at, 815 (negligence liability imposed only if employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes); *Doe*, 50 Cal.App.4th at 1054 (same).  Even if the Mentor entity defendants knew or should have known that Defendants Trigg and Brewer were incompetent to care for T.E. or assess him under § 5150 for admission to Marie Green, the Mentor entity defendants simply could not have foreseen this particular risk or hazard by a third party.  Moreover, neither Defendant Trigg nor Defendant Brewer were statutorily authorized by § 5150 to admit T.E. to Marie Green.  Indeed, § 5150 only permits "a peace officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, as defined by regulation, of a facility designated by the county for evaluation and treatment, designated members of a mobile crisis team, or professional person designated by the county" to "take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment."  Cal. Welf. & Inst. Code § 5150(a).

For these reasons, the Mentor entity defendants are entitled to summary judgment on Plaintiff's claim for negligent hiring, supervision, and retention.

### 4.   Sixth and Seventh Causes of Action – Assault and Battery

Defendants Trigg and Brewer contend that they are entitled to summary judgment on Plaintiff's claims for assault and battery because Plaintiff admitted that they never assaulted or

touched her.

*Legal Standards*

The elements of a civil assault under California law are: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed that she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm. *So v. Shin*, 212 Cal.App.4th 652, 669 (2013).

The elements of a cause of action for battery are: (1) defendant touched plaintiff, or cause plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching. *So*, 212 Cal.App.4th at 669.

*Analysis*

Plaintiff admits that neither Defendant Trigg nor Defendant Brewer touched her. Defs' Ex. 3, Pl's Depo. at 182:20-24. There also is no evidence from which to infer that Defendant Trigg or Defendant Brewer caused Plaintiff to be in fear of any harmful or offensive touching. A necessary element of a civil assault is a plaintiff's reasonable belief that she is about to be touched in a harmful or offensive manner. *So*, 212 Cal.App.4th at 669. At the hearing, Plaintiff's counsel argued that Defendants Trigg and Brewer said Plaintiff should be "tased" and this statement forms the basis for assault. However, Plaintiff has presented no evidence that she was aware of the statement at the time of the incident. Rather, Plaintiff learned of the statement long after the incident, through the transcript of the recording by Officer Rasmussen. Pl's Ex. 6.

As confirmed at the hearing, Plaintiff's assault and battery claims are based on the conspiracy/aiding and abetting allegations. Doc. 55 at 30-31. Given that Plaintiff's conspiracy allegations cannot survive summary judgment, neither can her claims of assault and battery against Defendants Trigg and Brewer. Therefore, Defendants Trigg and Brewer are entitled to summary judgment on Plaintiff's claims of assault and battery.

### 5.   Eighth Cause of Action - Intentional Infliction of Emotional Distress

To support liability on her claim of intentional infliction of emotional distress, Plaintiff argues that the conduct of Defendants Trigg and Brewer in encouraging, inducing and assisting Officer Rasmussen in attacking a defenseless nurse and arresting and falsely imprisoning her was outrageous. Doc. 55 at pp. 31-32.   Plaintiff also suggests that Defendants should be liable because they lied, misrepresented and made false statements in violation of § 5150.

*Legal Standard*

A cause of action for intentional infliction of emotional distress ("IIED") exists when there is: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe of extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993).   "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cochran v. Cochran*, 65 Cal.App.4th 488, 496 (1998).   Evidence that reflects "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" is insufficient. *Hughes*, 46 Cal.4th at 1051.   "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ." *Fuentes v. Perez*, 66 Cal.App.3d 163, 172 (1977) (citation omitted).

*Analysis*

The evidence is insufficient as a matter of law to support a claim for intentional infliction of emotional distress.   Plaintiff argues that Defendants Trigg and Brewer engaged in outrageous conduct by encouraging Officer Rasmussen to taser Plaintiff.   Doc. 55 at 31.   To support a cause of action for intentional infliction of emotional distress, the conduct at issue must be "directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."   *Christensen v. Superior* Court, 54 Cal.3d at 903.   Here, Plaintiff has not set forth any facts demonstrating that either Defendant Trigg or Defendant Brewer said anything directly to Plaintiff about the use of a taser or any made any direct

1   threats of physical harm.  Pl's Ex. 6 at 35:14-15.  The undisputed evidence also reflects that Officer

2   Rasmussen did not use a taser on Plaintiff.

3          Plaintiff also argues that Defendants Trigg and Brewer engaged in outrageous conduct by

4   lying, misrepresenting and making false statements in violation of § 5150.  Doc. 55 at 32.  However,

5   as previously discussed, Plaintiff has failed to present any evidence from which a reasonable jury

6   could find or infer that Defendants Trigg and Brewer made false statements to her in violation of §

7   5150.   Moreover, fraudulent misrepresentations, without more, are not sufficiently outrageous to

8   support a cause of action for intentional infliction of emotional distress.  *See Standard Wire & Cable*

9   *Co. v. AmeriTrust Corp.*, 697 F.Supp. 368, 372 (C.D. Cal. 1988).

10          The Court concludes that Defendants Trigg and Brewer are entitled to summary judgment on

11   this claim.

12                     **6.   Ninth Cause of Action - False Imprisonment/False Arrest**

13          To support a claim for false imprisonment/false arrest, Plaintiff argues that Defendants Trigg

14   and Brewer "conspired, [ ] aided, abetted, instigated, the assisted Officer Rasmussen in the torts he

15   committed against Plaintiff, Nancy Novak."  Doc. 55 at 32.

16          *Legal Standard*

17          The tort of false imprisonment consists of the "nonconsensual, intentional confinement of a

18   person, without lawful privilege, for an appreciable length of time, however short."  *Fermino v. Fedco,*

19   *Inc.*, 7 Cal.4th 701, 715 (1994).   "'False arrest' and 'false imprisonment' are not separate torts," rather

20   "[f]alse arrest is but one way of committing a false imprisonment."  *Asgari v. City of Los Angeles*, 15

21   Cal.4th 744, 752 n.3 (1994).

22          *Analysis*

23          There is no evidence that Defendants Trigg or Brewer imprisoned or confined Plaintiff in any

24   way.   Instead, Plaintiff premises her false imprisonment/false arrest claim on her conspiracy

25   allegations.  Because the conspiracy allegations cannot survive summary judgment, Plaintiff's claim

26   for false imprisonment/false arrest against Defendants Trigg and Brewer also cannot survive.

27                     **7.   Tenth Cause of Action - Violation of Civil Code § 52.1**

28          The crux of Plaintiff's argument in support of claimed violation of California Civil Code §

                                                    23

1    52.1 appears to be that Defendants Trigg and Brewer engaged in threats and violence against her by

2    requesting that Officer Rasmussen taze her.  Doc. 55 at 32.

3         *Legal Standard*

4         Civil Code § 52.1 provides that if a person interferes, or attempts to interfere, "by threats,

5    intimidation, or coercion . . . with the exercise or enjoyments . . . of rights secured by the Constitution

6    or laws of the United States" an action for damages may be brought.  Cal. Civ. Code § 52.1.  The

7    essence of a § 52.1 claim is that "the defendant, by the specified improper means (i.e., 'threats,

8    intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the

9    right to do under the law or to force the plaintiff to do something that he or she was not required to do

10   under the law." *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 955-56 (2012).  "A defendant

11   is liable if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by

12   the requisite threats, intimidation, or coercion."  *Id.* at 956.  "Although the Bane Act was initially

13   considered to apply only to hate crimes, the California Supreme Court subsequently broadened its

14   application and held that "plaintiffs need not allege that defendants acted with discriminatory animus

15   or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion."

16   *Estate of Lopez ex rel. Lopez v. City of San Diego*, 2014 WL 7330874, at * 13 (S.D. Cal. Dec. 18,

17   2014) (citation omitted).

18        "To prevail on a Bane Act claim, a plaintiff must demonstrate: 1) an act of interference with a

19   legal right by 2) intimidation, threats or coercion."  *Russell v. City and County of San Francisco*, 2013

20   WL 2447865, *15 (N.D. Cal. Jun. 5, 2013).  Where the claim is brought against a private individual

21   based on interference with the plaintiff's constitutional rights, the plaintiff must demonstrate that a

22   state actor engaged in unconstitutional conduct, as a private citizen cannot directly violate the

23   constitutional rights of another individual.  *Russell*, 2013 WL 2447865 at *15.

24        *Analysis*

25        The evidence is insufficient as a matter of law to support a claim for violation of the Bane Act

26   by Defendants Trigg and Brewer.  Although Plaintiff contends that Defendants Trigg and Brewer

27   requested that Officer Rasmussen tase Plaintiff, such a statement, without more, is insufficient to

28   support a Bane Act claim.  "Speech alone is not sufficient to support an action [under the Bane Act]  . .

                                                24

. except upon a showing that *the speech itself threatens violence* against a specific person or group of persons; <u>and</u> *the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them* or their property and that the person threatening violence had the apparent ability to carry out the threat."   Cal. Civ. Code § 52.1(j) (emphasis added).   Here, Plaintiff has failed to submit any evidence demonstrating that Defendants Trigg or Brewer threatened violence against her or, more particularly, that she reasonably feared that violence would be committed against her because of any threats by Defendants Trigg or Brewer.

As discussed in conjunction with Plaintiff's assault claim, Plaintiff has presented no evidence that she was aware of the purported taser statement at the time of the incident.   "In evaluating the threatening or coercive conduct, the Court must consider whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence.'"   *Muhammad v. Garrett*, 66 F.Supp.3d 1287, 1296 (E.D. Cal. 2014) (quoting *Richardson v. City of Antioch*, 722 F.Supp.2d 1133, 1147 (N.D. Cal. 2010).   If Plaintiff did not hear the statement regarding the taser, and there is no evidence that she did, then there is no evidence from which a jury could infer that Plaintiff reasonably perceived a threat of violence from Defendant Trigg or Defendant Brewer.

Plaintiff also has failed to present competent evidence that any alleged request to use a taser on Plaintiff caused Officer Rasmussen to use force.   At best, the facts presented to the Court reveal that an individual at the scene may have suggested that Officer Rasmussen utilize his taser on Plaintiff, but that Officer Rasmussen rejected this suggestion. PSF 144, Pl's Ex. 6 at 35:14-16.

As a final matter, the Court notes that during the course of the hearing, Plaintiff's counsel implied that the actions of Defendants Trigg and Brewer (in conjunction with Officer Rasmussen) amounted to a hate crime due to Plaintiff's sexual orientation.   To support this implication, counsel suggested that Defendants Trigg and Brewer could infer Plaintiff's sexual orientation based on Plaintiff's appearance alone.

Plaintiff's implications and suggestions shall be soundly rejected.   First, there is no evidence that Trigg or Brewer made any such inference. Second, the Court will not consider an argument raised for the first time at oral argument.   Furthermore, and significantly, the Court will not engage in the

apparent stereotypical profiling of Plaintiff encouraged by her counsel.

### 8.   Respondeat Superior Liability of Mentor Entity Defendants

With the exception of her claim for negligent hiring, supervision and retention, Plaintiff relies on respondeat superior to impose liability against the Mentor entity defendants for the conduct of Defendants Trigg and Brewer.   Under a respondeat superior theory, an employer is held vicariously liable for the torts committed by its employee within the scope of employment.   *Lisa M. v. Henry Mayo Newhall Mem. Hosp.*, 12 Cal.4th 291, 296 (1995).   However, an employer cannot be held vicariously liable under respondeat superior unless the employee is found responsible, and a finding that exonerates the employee also exonerates the employer. *See Lathrop v. Healthcare Partners Medical Group*, 114 Cal.App.4th 1412, 1423 (2004); *Perez v. City of Huntington Park*, 7 Cal.App.4th 817, 819-20 (1992).   In this instance, because the Court has found that Defendants Trigg and Brewer are entitled to summary judgment on Plaintiff's state law claims, the Mentor entity defendants cannot be held liable under respondeat superior.

### 9.   Sanctions

As a final matter, Plaintiff requests sanctions against Defendants pursuant to Federal Rule of Civil Procedure 56(h) based on the submission of sham declarations.   Doc. 55 at pp. 7-8.   In relevant part, Rule 56(h) provides:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result.   An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Fed. R. Civ. P. 56(h).

Plaintiff contends that sanctions are warranted because the declarations of Defendants Trigg and Brewer submitted in support of the motion for summary judgment "are shams."  (Doc. 55 at p. 7). To support this contention, Plaintiff directs the Court to the number of times that Defendants Trigg and Brewer testified at their depositions that they did not remember, did not recall or did not know. (Doc. 55 at 7-8).  Plaintiff submits that the disparity between the depositions in not recalling facts and the declarations recalling facts is so extreme as to be tantamount to contradictions and the Court

26

should disregard them as shams.  Plaintiff also faults defendants because their declarations use the same words.

The Court is not persuaded that the mere number of times Defendants Trigg and Brewer testified that they did not know, did not remember or did not recall demonstrates that their later declarations were shams.  Plaintiff has not directed the Court to any statements contained in the declarations of Defendants Trigg and Brewer attesting to facts that they previously stated in their depositions that they could not remember, could not recall or did not know.  *Yeager v. Bowlin*, 693 F.3d 1076, 1080-81 (9th Cir. 2012) (district court may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember).  Plaintiff also has not demonstrated that defendants refused to provide information that they should have known.  *Id.* (witness can be punished for contempt of court when he refuses to give information he should know).  That the declarations, which were likely prepared by Defendants' shared legal counsel, contained similar language is not probative of any improper purpose or evasiveness.

For these reasons, the Court declines to grant Plaintiff's request for sanctions pursuant to Rule 56(h).

### CONCLUSION AND ORDER

Based on the foregoing, it is HEREBY ORDERED as follows:

1.  Defendant CareMeridian, LLC (erroneously sued as Meridian Care, LLC) is DISMISSED from this action; and

2.  Defendants' motion for summary judgment, filed on February 24, 2016, is GRANTED as to the following claims against Defendants Trigg, Brewer and the Mentor entity defendants:  (1) Negligence; (2) Negligent Hiring, Supervision, Retention; (3) Violation of Penal Code § 148, Negligence Per Se; (4) Assault; (5) Battery; (6) Intentional Infliction of Emotional Distress; (7) False Imprisonment/False Arrest; and (8) Violation of Civil Code § 52.1.

IT IS SO ORDERED.

Dated:   __May 23, 2016__          ___/s/ Barbara A. McAuliffe___
                              UNITED STATES MAGISTRATE JUDGE

27